UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ZEVOLI 243 (PTY) LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-03059-JMS-DML |
| | ) | |
| DOW CHEMICAL COMPANY, and | ) | |
| DOW AGROSCIENCES LLC, | ) | |
| | ) | |
| Defendants. | ) | |

.

## ORDER

This matter is before the Court on Defendants Dow Chemical Company ("Dow Chemical")
and Dow Agrosciences LLC's ("Dow Agro") (collectively, "Defendants") Motion to Dismiss.
[Filing No. 20.]   Plaintiff Zevoli 243 (PTY) Ltd.'s ("Zevoli") Complaint for Damages and
Declaratory Judgment ("Complaint") seeks relief for alleged environmental contamination of real
property owned by Zevoli in South Africa by Defendants' subsidiary Dow AgroSciences Southern
Africa (Proprietary) Limited ("Dow South Africa").   [Filing No. 1].   Defendants move to dismiss
the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and the common
law doctrine of forum non conveniens.   For the reasons stated below, the Court **DENIES IN PART**
and **GRANTS IN PART** Defendants' Motion to Dismiss.

### I.
#### DOW CHEMICAL'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

#### A.  Standard of Review

When a defendant moves to dismiss a complaint under Rule 12(b)(2), "[t]he plaintiff bears
the burden of showing that personal jurisdiction over the defendant exists."  *Claus v. Mize,* 317
F.3d 725, 727 (7th Cir. 2003).  When, as here, the Court "rules on a defendant's motion to dismiss

based on the submission of written materials, without the benefit of an evidentiary hearing . . . the plaintiff 'need only make out a prima facie case of personal jurisdiction.'" *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003) (quoting *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002)). Any factual disputes are resolved in the plaintiff's favor. *Id.*

"A federal district court's personal jurisdiction over a defendant is established in a diversity-jurisdiction case . . . only so long as the defendant is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *N. Grain Mktg., LLC v. Greving,* 743 F.3d 487, 491 (7th Cir. 2014). Indiana Trial Rule 4.4(A) serves as Indiana's long-arm provision and expands personal jurisdiction to the full extent permitted by the Due Process Clause. *See LinkAmerica Corp. v. Cox,* 857 N.E.2d 961, 965-66 (Ind. 2006). "Thus, the statutory question merges with the constitutional one—if [Indiana] constitutionally may exercise personal jurisdiction over a defendant, its long-arm statute will enable it to do so." *N. Grain,* 743 F.3d at 492.

"The federal constitutional limits of a court's personal jurisdiction in a diversity case are found in the Fourteenth Amendment's due-process clause." *Id.* "[F]ederal constitutional law draws a sharp and vital distinction between two types of personal jurisdiction: specific or case-linked jurisdiction, and general or all-purpose jurisdiction." *Abelesz v. OTP Bank,* 692 F.3d 638, 654 (7th Cir.2012). "If the defendant's contacts are so extensive that it is subject to general personal jurisdiction, then it can be sued in the forum state for any cause of action arising in any place." *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). "More limited contacts may subject the defendant only to specific personal jurisdiction, in which case the plaintiff must show that its claims against the defendant arise out of the defendant's constitutionally

sufficient contacts with the state." *Id.* Zevoli only asserts that the Court has specific, not general, jurisdiction over Dow Chemical. [Filing No. 27 at 22-24.]

**B. Background**

The following allegations are taken from Zevoli's Complaint, and are accepted as true for purposes of deciding the pending jurisdictional motion, consistent with the applicable standard of review. [Filing No. 1.]

*1. The Canelands Site*

Zevoli is a South African private company with its principal offices in South Africa. [Filing No. 1 at 1.] Dow Chemical is a corporation organized under the laws of Delaware with its headquarters and principal place of business in Midland, Michigan. [Filing No. 1 at 1.] Dow Agro, a wholly-owned subsidiary of Dow Chemical, has its headquarters and principal place of business in Indianapolis, Indiana. [Filing No. 1 at 2.] Dow South Africa is a wholly-owned subsidiary of Dow Agro. [Filing No. 1 at 2.]

This dispute relates to contamination to real property in South Africa known as the Canelands Site. [Filing No. 1 at 3.] Dow South Africa acquired the Canelands Site in 1997. [Filing No. 1 at 3.] Dow South Africa continuously manufactured agricultural chemicals on the Canelands Site until the decommissioning of Dow South Africa's facilities at the site. [Filing No. 1 at 3.]

In 2007, Dow South Africa sold the Canelands Site to Chemical Specialties (Proprietary) Limited ("ChemSpec"). [Filing No. 1 at 3.] In the Property Sale Agreement ("2007 PSA"), Dow South Africa warranted that it had disclosed all material information to ChemSpec, including information relating to environmental risks. [Filing No. 1 at 3.] In connection with the 2007 PSA,

Defendants' representatives[1] informed ChemSpec representatives of a discrete area of buried arsenic waste in a sump adjacent to a mono sodium methyl arsenate plant, known as the Peskor Plant, which was located on the Canelands Site. [Filing No. 1 at 3.] Defendants' representatives assured ChemSpec that the arsenic contamination near the Peskor Plant was a contained problem capable of total remediation, which would be completed and paid for by Dow South Africa at its own expense. [Filing No. 1 at 4.] Defendants and Dow South Africa did not, however, disclose the full extent of the arsenic contamination around the Peskor Plant. [Filing No. 1 at 4.]

On June 22, 2007, ChemSpec and Dow South Africa executed a lease agreement (the "ChemSpec Lease"), by which Dow South Africa leased back a portion of the Canelands Site. [Filing No. 1 at 5.] The ChemSpec Lease provided that Dow South Africa was to: (1) keep the premises in good order and condition; (2) comply with all applicable laws relating to the premises, including environmental authorizations and laws; (3) ensure that no nuisances emanated from the premises; and (4) remediate any contamination caused during the lease period as a result of Dow South Africa's conduct. [Filing No. 1 at 5.] Section 15.6 states that Dow South Africa agreed to remain bound by the terms of the ChemSpec Lease regardless of any sale or assignment by ChemSpec, and to cooperate fully with the same. [Filing No. 1 at 5-6.]

In 2009, ChemSpec sold the Canelands Site to Zevoli. [Filing No. 1 at 6.] In the Agreement of Sale ("2009 PSA"), ChemSpec warranted that no bases existed for third-party claims relating to the Canelands Site and that both ChemSpec and Dow South Africa had complied with all environmental laws. [Filing No. 1 at 6.] ChemSpec guaranteed that it had disclosed to Zevoli "all information relating to the [Canelands Site] which is, or which is reasonably likely to be

_____

[1] Zevoli lists various individuals but, as throughout most of the Complaint, does not indicate whether the individuals work for Dow Chemical or Dow Agro. [Filing No. 1 at 3-4.]

material to the purchaser," and agreed to indemnify Zevoli for any claims, loss, or damages that "[Zevoli] may suffer arising from any breach of any of the warranties." [Filing No. 20-1 at 86-89.] In exchange, Zevoli agreed to assume "the risk, benefit, rights and obligations" with respect to the Canelands Site. [Filing No. 20-1 at 85-86.]

In early 2015, ChemSpec entered business rescue proceedings.[2] [Filing No. 1 at 8.] In January 2016, pursuant to the business rescue proceedings, ChemSpec liquidators gave notice to Zevoli that ChemSpec would no longer abide by the 2009 lease agreement and would vacate the premises. [Filing No. 1 at 8-9.] Following the lease's cancellation, ChemSpec relinquished all rights with respect to the Canelands Site and the Dow South Africa leased premises. [Filing No. 1 at 9.] Zevoli, which had purchased the Canelands Site subject to the preexisting lease between Dow South Africa and ChemSpec, stepped in as the Lessor under that agreement. [Filing No. 1 at 9.]

Shortly after ChemSpec entered business rescue proceedings, Dow South Africa notified Zevoli that it had reported contamination of the Canelands Site to South Africa's Department of Environmental Affairs ("DEA"), pursuant to the National Environmental Management: Waste Act of 2008. [Filing No. 1 at 9.] The DEA notification included environmental reports from 2005, 2007, and April 2015 generated by South African environmental consulting firm Jones & Wagener ("J&W") on behalf of Dow South Africa. [Filing No. 1 at 10.] J&W also disclosed water testing results from 2011 and 2012. [Filing No. 1 at 10.] None of these reports had been previously disclosed to Zevoli or ChemSpec. [Filing No. 1 at 10.]

---

[2] Business rescue proceedings are a procedure akin to Chapter 7 under the United States Bankruptcy Code. [Filing No. 20-3 at 1.]

The reports revealed that the contamination at the Canelands Site was not decreasing as a result of the remediation activities conducted pursuant to the 2007 PSA; rather, the contamination was spreading and worsening. [Filing No. 1 at 10.]

The 2005 report made known many other types of contamination around the Canelands Site in addition to the buried arsenic in the sump at the Peskor Plan that Dow South Africa actually disclosed in 2007. [Filing No. 1 at 10.]

The 2007 J&W report was issued in February 2007, shortly before the execution of the 2007 PSA, and revealed worsening arsenic contamination and highly contaminated water flowing in and out of the basement sump in the main building. [Filing No. 1 at 11.] J&W recommended that any party purchasing or operating the Canelands Site be fully informed of the human health risks present and noted that the contamination could spread off-site in the future. [Filing No. 1 at 11.]

In 2016, "Defendants demolished the water treatment plant constructed in 2012, a manufacturing plant and associated labs, a steam generation room, and a process control area." [Filing No. 1 at 15.] Zevoli owned these buildings and did not authorize their demolition. [Filing No. 1 at 15.]

### 2. Allegations Against Dow Chemical and Dow Agro

Zevoli has lodged several allegations against the Defendants for the acts of their subsidiary, Dow South Africa. [Filing No. 1 at 16-17.] Zevoli alleges that the "Defendants are fully responsible for the misconduct of [Dow South Africa. Upon information and belief, [Dow South Africa] is undercapitalized, and appropriate corporate formalities have not been observed between [Dow South Africa] and its corporate parents." [Filing No. 1 at 16.] Zevoli also alleges that "it

appears" that the Defendants used Dow South Africa "as a shield to avoid liability arising out of their misconduct with respect to the Canelands Site." [Filing No. 1 at 16.]

Zevoli alleges that "[a] director of Zevoli was also told by an attorney for [Dow South Africa] that Dow [Chemical] has total control and responsibility over the actions of [Dow South Africa]." [Filing No. 1 at 16.] Zevoli further claims that most of the employees with whom ChemSpec and Zevoli interacted regarding the purchase and lease of the Canelands Site, and who made representations about the environmental status of the site, were in fact employees of Defendants and not Dow South Africa. [Filing No. 1 at 16.] Moreover, Defendants' employees visited the Canelands Site to assess the contamination and "communicated with Zevoli regarding the events at issue." [Filing No. 1 at 16-17.]

Dow Chemical carries a $45,000,000 umbrella policy on the Canelands Site in its own name. [Filing No. 1 at 16.]

**C. Discussion**

Defendants argue that Dow Chemical's only connection to Indiana is the fact that Dow Agro is its wholly-owned subsidiary, which is insufficient to establish personal jurisdiction over it. Defendants claims that Zevoli's mere allegation that "the parent corporation exercised control over its wholly-owned subsidiary, and that the wholly-owned subsidiary in turn would have carried out the parent's directions in the forum state[]" is insufficient to establish jurisdiction over it. [Filing No. 28 at 5.]

Zevoli first concedes that Indiana does not maintain general jurisdiction over Dow Chemical. [Filing No. 27 at 22.] With respect to specific jurisdiction, Zevoli argues that the actual decisions relating to the Canelands Site, including remediation efforts and its sale, were made in the United States. It also states that "[w]hile all the evidence is not yet available, the pleadings

and allegations … support an inference that Dow [Chemical] acted through [Dow Agro], its wholly-owned Indiana subsidiary, in exercising control over [Dow Agro]'s direct subsidiary, [Dow South Africa]." [Filing No. 27 at 22.] In other words, Zevoli contends that "[Dow Agro]'s implementation of [Dow Chemical]'s orders would have taken place in this state." [Filing No. 27 at 22-23.]

Defendants respond that there are no factual allegations to support Zevoli's "inference" that Dow Chemical acted through Dow Agro to exercise control over Dow South Africa. [Filing No. 28 at 4.] Therefore, Zevoli cannot make out a *prima facie* case for specific jurisdiction.

The Court agrees. For the Court to exercise specific jurisdiction, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum so that the defendant may reasonably anticipate being hailed into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) (citations omitted). To exercise jurisdiction consistent with due process, "the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Advanced Tactical Ordnance Sys, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (quotation marks and citation omitted).

Zevoli requests an "inference" that Dow Chemical, in Michigan, directed Dow Agro, in Indiana, to take or omit certain actions relating to Dow South Africa at the Canelands Site. But nothing in the Complaint suggests that Dow Chemical somehow used Indiana to harm Zevoli in South Africa. The Complaint bundles Dow Chemical and Dow Agro into the "US Dow Entities" and makes no mention of any specific activity performed by Dow Chemical in Indiana that could establish specific jurisdiction. [Filing No. 1 at 16-17.] Although the Complaint states that "[a] director of Zevoli was also told by an attorney for [Dow South Africa] that Dow [Chemical] has

total control and responsibility over the actions of [Dow South Africa,]" there is nothing to suggest that such control was exercised in Indiana. [Filing No. 1 at 16.]

Moreover, nothing in the Complaint suggests that Dow Chemical exerted an unusually high degree of control over Dow Agro or that Dow Agro's corporate existence is a mere formality and that Dow Agro is simply Dow Chemical's agent. *See Purdue Research Found.*, 338 F.3d at 788 n.17. And the fact that Dow Chemical owns "a majority of [Dow Agro] stock is insufficient to establish personal jurisdiction." *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). Thus, Zevoli has failed to establish a *prima facie* case to allow this Court to exercise specific jurisdiction over Dow Chemical. Accordingly, Defendants' Motion to Dismiss Dow Chemical for lack of personal jurisdiction pursuant to Rule 12(b)(2) is **GRANTED**.

### 1. *Jurisdictional Discovery*

In the alternative to dismissal for lack of personal jurisdiction, Zevoli requests that the Court allow it limited jurisdictional discovery. The Court first notes Defendants' assertion that Zevoli informed the Magistrate Judge at the November 7, 2017 initial pretrial conference that it would not need discovery relating to Defendants' motion to dismiss Dow Chemical for lack of personal jurisdiction. [Filing No. 28 at 5-6.] Defendants raise this for the first time in their reply brief, which is understandable given their prior understanding of Zevoli's intentions with respect to jurisdictional discovery. Zevoli does not contest this assertion with a surreply or any evidence, however, and therefore the Court accepts as true Defendants' uncontested assertion that Zevoli waived the opportunity to seek jurisdictional discovery in this matter.

Nonetheless, even if Zevoli had not waived the opportunity to seek jurisdictional discovery, it has failed to make an adequate showing for which such relief could be granted. It is "well established that a plaintiff does not enjoy an automatic right to discovery pertaining to personal

jurisdiction in every case." *Andersen v. Sportmart, Inc.*, 179 F.R.D. 236, 241 (N.D. Ind. 1998).

"At a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). In other words, a "plaintiff must make a threshold or prima facie showing with some competent evidence demonstrating that personal jurisdiction *might* exist over a defendant in order to be entitled to jurisdictional discovery." *Andersen*, 179 F.R.D. at 241 (citations omitted) (emphasis in original). "This standard is quite low, but a plaintiff's discovery request will nevertheless be denied if it is only based upon 'bare,' 'attenuated,' or 'unsupported' assertions of personal jurisdiction[.]" *Id.* (citing *Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308, 312 (S.D. Ind. 1997) (collecting cases)).

As stated more fully above, Zevoli's Complaint fails to meet even this threshold with respect to the alleged contacts that Dow Chemical maintains in Indiana, and therefore Zevoli's request for jurisdictional discovery is **DENIED**.

## II.
### DOW AGRO'S MOTION TO DISMISS FOR FORUM NON CONVENIENS[3]

#### A. Standard of Review

Because the Court does not have personal jurisdiction over Dow Chemical, the Court will only address Dow Agro, which has moved for dismissal pursuant to the common law remedy of forum non conveniens. The Court "has discretion to dismiss a case on the ground of forum non conveniens when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to

---

[3] Defendants also argue that the Complaint must be dismissed pursuant to Rule 12(b)(6) as it fails to allege plausible facts and only asserts conclusory allegations against the Defendants. Because this entire matter is best suited for resolution in South African courts, the Court will not address Defendants' Rule 12(b)(6) motion or the sufficiency of Zevoli's Complaint.

plaintiff's convenience[.]" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (internal citations omitted). The Court may also dismiss the case if "the chosen forum [is] inappropriate because of considerations affecting the court's own administrative or legal problems." *Id.* The doctrine of forum non conveniens is an exceptional doctrine that must be used sparingly. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 805 (7th Cir. 2016) (citation omitted). A defendant bears a heavy burden in opposing the plaintiff's chosen forum, which is given preferential treatment. *Id.* at 806. When a plaintiff's chosen forum is not its home forum, "the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable." *Id.* (internal quotation marks and citation omitted).

Determining whether dismissal for forum non conveniens is appropriate first requires the Court to inquire as to the availability and adequacy of the alternative forum. *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 802 (7th Cir. 1997). If an adequate and available forum exists, the Court then proceeds to balance the public and private interest factors set forth in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). *Id.* at 803.

### B. Discussion

#### 1. Adequacy

Dow Agro claims that South Africa is an adequate forum and, in support, attaches the declaration of David Nat Unterhalter, who is Senior Counsel practicing at the Johannesburg Bar, South Africa. [Filing No. 20-2.] Mr. Unterhalter stated that Zevoli may claim damages for breach of contract that would place the innocent party in the same position it would have been in had no breach occurred. [Filing No. 20-2 at 5-6.] He also opined that "patrimonial damages may be awarded in respect of loss actually suffered, and in certain circumstances, damages may also be awarded for pure economic loss which is not connected to any physical injury or damage to

property[.]"  [Filing No. 20-2 at 6.]  These damages allow for recovery of loss of profit or the diminution of the value of the property.  [Filing No. 20-2 at 6.]  Mr. Unterhalter also stated that injunctive relief may be granted as an interdict, which could be either mandatory or prohibitory in nature.  [Filing No. 20-2 at 6.]  He further stated that "[t]he causes of action set out in the Complaint have equivalent or analogous claims under South African law[.]"  [Filing No. 20-2 at 6.]  Mr. Unterhalter did note, however, that no South African common law offense exists that is equivalent to "imputing strict liability in respect of '*abnormally dangerous activities*', although there are certain statutory offences which impose this standard."  [Filing No. 20-2 at 6 (emphasis in original)].  Finally, Mr. Unterhalter cited Section 20(9) of the Companies Act, which "provides a statutory basis for piercing the corporate veil" and empowers a court to pierce the corporate veil of a subsidiary to hold the parent company liable upon a showing of unconscionable abuse of the corporate form.  [Filing No. 20-2 at 8-9.]

Zevoli does not specifically contest the characterization of South African law as outlined by Mr. Unterhalter.  Instead, Zevoli argues generally that "the available forms of relief in South Africa are much more limited."  [Filing No. 27 at 30.]  Zevoli complains that punitive damages are not recognized under South African law and that the declaratory relief is more limited than in the United States.  [Filing No. 27 at 30.]  It also protests that a jury trial is not available in South Africa, nor can it pursue its strict liability claim.  [Filing No. 27 at 30.]

"An 'alternative forum is adequate when the parties will not be deprived of all remedies or treated unfairly.'"  *Fischer v. Mayar Allambasutak*, 777 F.3d 847, 867 (7th Cir. 2015) *cert. denied*, --- U.S. ----, 135 S.Ct. 2817 (2015) (quoting *Kamel*, 108 F.3d at 803).  A dismissal based on forum non conveniens, however, should not be rejected simply because it would lead to a change of law that does not favor the plaintiff.  *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 484 F.3d

951, 956 (7th Cir. 2007) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 247 (1981)). "Only if 'the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all' should the unfavorable change be given substantial – or even dispositive – weight." *Id.* (quoting *Piper Aircraft*, 454 U.S. at 254).

None of the arguments raised by Zevoli establish that it will be "deprived of all remedies or treated unfairly." *Kamel*, 108 F.3d at 803. Nor is there anything to suggest that the remedy offered by the South African courts is "so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft*, 454 U.S. at 254. Thus, South Africa is an adequate forum to hear the claims of this case.

## 2. *Availability*

Zevoli claims that Dow Agro is neither amenable to service in South Africa nor has a presence in the country, aside from a parent-subsidiary relationship with Dow South Africa, which is insufficient to establish jurisdiction over Dow Agro. [Filing No. 27 at 23-25.]

Zevoli argues that this case is comparable to the facts set forth in *Deb v. SIRVA, Inc.*, 832 F.3d 800 (7th Cir. 2016). In *Deb*, the plaintiff argued that Allied Van Lines and SIRVA (the "<u>*Deb*</u> <u>defendants</u>"), entered a joint venture with Allied Lemuir, an Indian company, such that they could be held accountable for its actions. *Id.* at 805. In arguing that the Indian courts were available, the *Deb* defendants claimed that, if the plaintiff's joint venture argument as alleged was correct, they would be responsible for the joint venture's actions and the Indian courts could exercise jurisdiction over them as part of the joint venture. *Id.* at 807. Yet, in reality, the Seventh Circuit noted, the *Deb* defendants disavowed any affiliation with Allied Lemuir, leaving them in the position of "trying to thread a small-eyed needle by claiming, on the one hand, that they could be subject to jurisdiction in India, while simultaneously refusing to acknowledge an actual legal

affiliation with Allied Lemuir." *Id.* at 808. The *Deb* court concluded that "[t]o the extent the defendants offered any evidence or argument at all, it was evidence that they would not, in fact, be subject to jurisdiction in India." *Id.* at 810. The court further noted that the *Deb* defendants had not offered any other basis by which the Indian courts could assert jurisdiction over them, nor had they consented to that jurisdiction. *Id.* at 812.

Dow Agro responds that Zevoli is able to "obtain complete relief by proceeding against [Dow South Africa], which is undoubtedly amenable to service of process in South Africa, and there is no reason to believe that [Dow South Africa] would be unable to satisfy a judgment against it." [Filing No. 28 at 11.] In support, Dow Agro merely points to the allegation in the Complaint relating to "an insurance policy with a limit in the tens of millions of dollars." [Filing No. 28 at 11.] Second, Dow Agro claims that Zevoli may acquire jurisdiction over it by attaching its property in South Africa, which would include any holdings belonging to Dow South Africa. Neither of these arguments resolves the issue of availability.

Dow Agro's first assertion presumes that the damages will be covered by the insurance policy and/or the attachment of its property in South Africa, but offers no support to suggest that either of those assets would provide adequate coverage for damages that have yet to be determined. Despite having contracted with J&W to assess the damage as well as the remediation efforts necessary to clean up the Canelands Site, Dow Agro sets forth no evidence relating to the damages caused by the environmental hazards on the property. Accordingly, such a bald assertion is disregarded by the Court. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (arguments that are underdeveloped, conclusory, or unsupported by law may be deemed waived).

In support of its second argument, Dow Agro relies solely on *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota, et al.*, 545 F. 3d 357 (6th Cir. 2008). In *Estate of Thomson*, the

Sixth Circuit found that South Africa was an available forum to the plaintiffs because they could pursue claims against Oklahoma-based defendant Thrifty's South African subsidiary, which would be amenable to service there. *Id*. at 365. The court determined that Thrifty's non-amenability to service did not preclude dismissal, and found that the plaintiff's ability to sue Thrifty's associated entities rendered South Africa an "adequate forum." *Id*. In dismissing Thrifty for forum non conveniens, the court held:

> Thrifty is not, as plaintiffs contend, trying to hide its corporate identity, but rather makes clear that Safy, or its affiliates listed above, is the entity with whom plaintiff contracted. Thus, an adequate forum exists in South Africa and there are corporate entities, indeed the proper entities, in South Africa which are amenable to service.

*Id*.

The Court first notes that *Estate of Thomson* is not controlling authority in this circuit. Moreover, the fact that a corporate affiliate is amenable to service in a foreign jurisdiction is irrelevant to establishing whether the corporation itself is amenable to service in that jurisdiction. *See Miller v. Toyota Motor Corp.*, 593 F. Supp. 2d 1254, 1258-59 (M.D. Fla. 2009) (noting that the *Estate of Thomson* court's conclusion "conflates the concepts of 'adequacy' and 'availability'"). In the Seventh Circuit, a forum is "available if *all parties* are amenable to process and are within the forum's jurisdiction." *Kamel*, 108 F.3d at 803 (emphasis added). That is not the case here. Dow Agro has not consented to South Africa's jurisdiction in this case; nor has it provided any evidence that, aside from its affiliation with Dow South Africa, it has a physical presence in South Africa and would be amenable to service there.

Because Dow Agro has not yet consented to jurisdiction in a South African court, the Court will require Dow Agro to file a report stating that it consents to the jurisdiction of the South African court before dismissal occurs, in order to establish that South Africa is, indeed, an available forum. *Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enterprise Fund*, 598 F.Supp.2d 875, 882 (N.D.

Ill. 2009) ("A party's express consent to a forum's jurisdiction obviates any concern about availability"); *Lie v. Boeing Co.*, 2004 WL 1462451, *2 (N.D. Ill. 2004) (conditioning dismissal based on forum non conveniens on, among other things, defendant agreeing to submit to the jurisdiction of the foreign court). The Court will also require Dow Agro to state in the report that it will accept service of process and waive any statute of limitations defense to Zevoli's claims that did not exist prior to initiation of the instant lawsuit (unless such a defense relies on Zevoli's failure to bring suit timely after the date on which the Court enters this dismissal) for a suit brought in South Africa. *See Bentel & Co., LLC v. Schraubenwerk Zerbst GmbH*, 2017 WL 3278324, *14-15 (N.D. Ill. 2017) (requiring defendant to file a statement agreeing to personal jurisdiction in foreign country, accepting service or process, and waiving any statute of limitations defense to plaintiff's claims).

Given Dow Agro's insistence on placing the full blame of the allegations made in the Complaint on its wholly-owned subsidiary, the Court finds that requiring Dow Agro to submit a report stating that it consents to the South African court's jurisdiction, will accept service of process, and will waive any statute of limitations defenses is both necessary and appropriate in order for the Court to ensure that South Africa is an available forum.

### 3. Private interest factors

"If an adequate alternative forum exists, the district court should consider whether a *forum non conveniens* dismissal would serve the private interests of the parties and the public interests of the alternative forums." *Stroitelstvo Bulgaria Ltd*, 589 F.3d at 425 (citation omitted). Relevant private interest factors include: (1) relative ease of access to sources of proof; (2) availability of compulsory process for unwilling witnesses and the costs of obtaining attendance of willing

witnesses; (3) possibility of viewing the premises, if appropriate; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 703 (7th Cir. 2005) (quoting *Gulf Oil Corp.*, 330 U.S. at 508). The private factors in this case favor dismissal.

### a. Relative ease of access to sources of proof

The majority, if not nearly all of the proof, likely lies in South Africa. The allegations in the Complaint relate to environmental contamination to real property in South Africa. Zevoli also alleges that certain buildings were constructed at the site to remediate the pollution and claims that they were destroyed without Zevoli's consent. The contracts underlying this dispute were executed and performed in South Africa. Finally, and most importantly, all contamination took place on South African soil, and any further testing that needs to be done to determine the extent of that contamination will necessarily be facilitated there. Accordingly, this factor weighs heavily in favor of dismissal.

### b. Availability of compulsory process and costs for attendance of willing witnesses

To the extent that a party in the United States wishes to obtain evidence from a witness present in South Africa, no procedure exists under "South African law to compel the witness to travel to the United States for trial, or to be examined by the parties' lawyers in South Africa." [Filing No. 20-2 at 7.] A party would have to apply to a High Court of South Africa and obtain an order that would allow for a magistrate to conduct the examination of the witness. [Filing No. 20-2 at 7.]

Most of the witnesses that were privy to the contract or participated in the alleged environmental contamination are located in South Africa, as all three companies that purchased or leased the Canelands Site during the relevant period are South African companies. J&W, the

environmental consulting firm that has tested the Canelands Site on multiple occasions, is located in South Africa. Notably, ChemSpec is in business rescue proceedings in South Africa. The Complaint centers a great deal on the relationship between ChemSpec and Dow South Africa, and the extent to which ChemSpec knew about the environmental contamination at the time it sold the Canelands Site to Zevoli. Given the uncertainty of ChemSpec's future, and the importance of ChemSpec's relationship with both Dow South Africa and Zevoli, if necessary, compulsory process would be much more convenient in South Africa. It would be quite burdensome for the parties to seek an order from a High Court in South Africa to conduct the examination; even more so given that the examination would not be conducted by the parties' counsel.

Indeed, the only allegations relating to United States witnesses involve corporate direction from Dow Agro to Dow South Africa. Assuming that Dow Agro submits to the jurisdiction of South Africa, such compulsory process shall not be an issue for obtaining testimony from Dow Agro personnel.

Finally, given that most of the witnesses are located in South Africa, aside from those few named in the Complaint who are United States citizens, the cost of obtaining their attendance in this Court would be much higher than doing so in South Africa.

Accordingly, this factor weighs heavily in favor of dismissal.

c. Possibility of viewing the premises

This factor, for obvious reasons, weighs heavily in favor of dismissal.

d. Other practical problems

Zevoli notes that any enforcement against Dow Agro would be difficult to collect, particularly in light of the alleged undercapitalization of Dow South Africa. [Filing No. 27 at 34-35.] Zevoli argues that Dow Agro has not consented to jurisdiction, shown that it has sufficient

assets in South Africa, nor agreed to satisfy any final judgment entered in that country. [Filing No. 27 at 34-35.]

Given the nature of the Court's conditional dismissal, this problem is no longer a concern and plays no further role in the Court's analysis.

After weighing the private interest factors, the Court concludes that relevant factors strongly favor dismissal in this case.

### 4. *Public interest factors*

The Court must next examine the public interest factors in determining whether dismissal is appropriate. Applicable public interest factors include: (1) administrative difficulties stemming from court congestion; (2) the local interest in having localized disputes decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that governs the action; (4) the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *In re Bridgestone/Firestone, Inc.*, 420 F.3d at 704 (quoting *Kamel*, 108 F.3d at 803).

### a. Administrative difficulties

The parties dispute whether South African courts offer a speedier trial than this Court. [*Compare* Filing No. 21 at 16 *with* Filing No. 27 at 33.] It is true that for the twelve-month period ending September 30, 2017, the Southern District of Indiana has the second highest number of weighted filings per judgeship in the United States. *See US District Courts – Weighted and Unweighted Filings per Authorized Judgeship During the 12-Month Period Ending September 30, 2017*, ADMINISTRATIVE OFFICE OF THE U.S. COURTS (September 30, 2017), *http://www.uscourts.gov/sites/default/files/data_tables/jb_x1a_0930.2017.pdf*. South Africa, however, also has considerable pressure on its courts system, and, if the case is not capable of

being certified trial-ready by mid-2018, a first hearing would be very unlikely before 2020. [Filing No. 27-2 at 17.]

Given the congestion of both court systems, the Court finds that this factor is neutral.

### b. Local interest in having localized disputes decided at home and the unfairness of burdening citizens in an unrelated forum with jury duty

This case involves real property contamination in South Africa as a result of contracts executed and performed in South Africa. Zevoli's own allegations contain reference to South African environmental regulations and the contamination of South African environmental resources. Moreover, the Complaint alleges that the South African DEA has been notified of the contamination on the property. *See In re Air Crash Near Athens, Greece on August 14, 5005*, 479 F. Supp. 2d 792, 804 (N.D. Ill. 2007) (noting that Cyprus government had already instituted its own investigation into the allegations set forth in the complaint). Thus, it is clear that South Africa has a strong interest in the environmental contamination at the Canelands Site.

The United States has little to no localized interest in resolving these disputes – the only allegations relating to United States citizens involve alleged overreach by Dow Agro as to the actions of its subsidiary, Dow South Africa. Moreover, given the United States' lack of interest in this dispute, it would be unfair to burden the citizens of Indiana with jury duty.

### c. Familiarity with governing law and avoidance of unnecessary problems in conflicts of law or application of foreign law

Finally, should this case remain with this Court, potential choice of law issues may arise. Although the contract between ChemSpec and Dow South Africa contains provisions allowing either party to choose South Africa as a forum, such election is not mandatory on either party and is therefore not dispositive on this issue. Neither party, however, provides any meaningful analysis of what other choice of law might apply. Nonetheless, the doctrine of forum non conveniens "is

designed in part to help courts avoid conducting complex exercises in comparative law." *Piper Aircraft Co.*, 454 U.S. at 251. Thus, "the public interest factors point towards dismissal where the court would be required to 'untangle problems in conflict of laws, and in law foreign to itself.'" *Id.* (quoting *Gulf Oil Corp.*, 330 U.S. at 509). Provided the substantial weight of all the other factors favoring dismissal, the Court need not reach a definitive conclusion on choice of law at this stage, though it too would likely favor dismissal. *See In re Air Crash Near Athens, Greece on August 14, 5005*, 479 F. Supp. 2d at 805 (citation omitted) (declining to "undertake a lengthy choice of law analysis" where weight of the other factors clearly favored dismissal).

Thus, as with the private interest factors, the public interest factors strongly favor South Africa as the proper forum for this suit.

## III.
### CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Dow Chemical for lack of personal jurisdiction pursuant to Rule 12(b)(2) is **GRANTED**. [20.] Zevoli's request for jurisdictional discovery is **DENIED**. Finally, Dow Agro is **ORDERED** to file a report within **14 days** of the entry of this Order stating whether it agrees to the conditions discussed in this Order relating to South Africa as an available forum. If Dow Agro agrees to the conditions discussed herein, the Motion to Dismiss based on forum non conveniens grounds will be granted without prejudice. If Dow Agro does not consent, the Court requests that the Magistrate Judge schedule a case management conference.

Date: 4/4/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

__Distribution via ECF only to all counsel of record__